RECEIVED
JAN 10 2023
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Western Division

Banan Alassaf,
    Plaintiff

v.

Hamzah Alkordy,
    Defendant

**COMPLAINT**

5:23-cv-00010-D

I, the Plaintiff, complaining of the Defendant, say and allege that

1. The Plaintiff is a citizen and resident of Wake County, North Carolina.
2. The Defendant is a citizen and resident of Placer County, California.
3. The Court has jurisdiction over this matter.
4. Defendant has failed to fulfill his contractual obligations under the I-864 Affidavit of Support.

WHEREFORE, Plaintiff demands judgment against Defendant for:

Plaintiff is asking the court to award judgment against the defendant(s) in the sum of $113,000.

Plaintiff is also asking for reimbursement of court costs and attorney fees.

For such other, further, and different relief to which Plaintiff may be entitled.

This the 23rd day of December, 2022.

*Bananalassa*
Banan Alassaf, Plaintiff
2317 Bryarton Woods Drive
Raleigh, North Carolina 27606
(919) 345-8105

1

RECEIVED
JAN 10 2023

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
Western Division

| | |
|---|---|
| Banan Alassaf, | Case No. 5:23-cv-00010-D |
| Plaintiff | |
| v. | COMPLAINT FOR DAMAGES AND SPECIFIC PERFORMANCE |
| Hamzah Alkordy, | |
| Defendant | |

Comes now the Plaintiff, Banan Alassaf ("Plaintiff" or "Ms. Alassaf"), who pleads as follows:

## I. INTRODUCTION

1. Plaintiff brings this action under 8 U.S.C. 1183a and Section 213A of the Immigration and Nationality Act, to enforce Defendant's obligation to provide financial support under the I-864 Affidavit of Support.

## II. JURISDICTION AND VENUE

2. The Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the action arises under the Immigration and Nationality Act.

3. Defendant has submitted himself to the personal jurisdiction of any federal or state court in which a lawsuit is brought based on enforcement of his signed I-864 Affidavit of Support. Therefore, the Court has personal jurisdiction over Defendant. See 8 U.S.C. § 1183a(a)(1)(C).

2

4. Venue is proper under 28 U.S.C. § 1391(b)(2) due to Plaintiff's place of residence, where the injury caused by Defendant's breach has occurred.

**III. PARTIES**

5. Plaintiff Banan Alassaf resides in Raleigh, North Carolina and has lived in the state for approximately eight months.

6. Defendant Hamzah Alkordy is a citizen of the United States, resides in Roseville, California at 400 Halliford Court, and is Plaintiff's estranged spouse.

7. As alleged herein, Defendant served as Plaintiff's I-864 Affidavit of Support sponsor and, in doing so, contractually promised to provide a specific level of income to Plaintiff.

**IV. STATEMENT OF THE CASE**

8. Plaintiffs files this action on December 14, 2021, seeking damages, pursuant to 42 U.S.C. § 1983 and the common law of North Carolina, to enforce the financial support duty set forth in the U.S. Citizenship and Immigration Services Form 1-864, Affidavit of Support under Section 213 A of the Immigration or Nationality Act. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, or other proper proceedings for redress for which injunctive relief should be granted because a declaratory decree has been violated. Respondent is a signatory to a contractual agreement between two or more parties which obligates him to commit to and engage in specific acts and/or obligations enforceable by law. Failure to abide by these obligations may be punishable by law in the form of monetary fines and other remedies for which the Court sees fit.

3

9. A financial sponsor must complete and sign an appropriate Affidavit of Support form (I-864), and upon completion, it is accepted. The person completing the affidavit is the sponsor. It has been determined by law that the I-864 provides the noncitizen-beneficiary a private cause of action against the sponsor, should he fail to maintain support.

10. Specifically, the sponsor authorizes the intending noncitizen to become a third-party beneficiary regarding the promise of support made by the sponsor to the U.S. Government. Under the terms of the I-864, only five specified events end the sponsor's support obligations: the beneficiary (1) becomes a U.S. citizen; (2) can be credited with 40 quarters of work; (3) ceases to no longer a permanent resident and has withdrawn permanently from the United States; (4) after being ordered removed seeks permanent residency based on a different I-864; or (5) dies.

11. Divorce does not terminate the obligation. By signing this form, the sponsor agrees to support the immigrant and/or immigrating spouse.

12. A signature is a handwritten depiction of the sponsor's name, nickname, or even a simple "X" or another mark that a person writes on documents as proof of identity and intent. The writer of a signature is a signatory or signer. Similar to a handwritten signature, a signature work describes the work as readily identifying its creator.

13. The Department of Homeland Security amended its regulations regarding the Affidavit of Support Under Section 213A of the INA (Affidavit). The proposed rule changes certain requirements for the Affidavit and is intended to better ensure that all sponsors, as well as household members who execute a Contract Between Sponsor and Household Member (Contract), have the means to maintain income at the applicable income threshold and are capable of meeting their support obligations under section 213A of

4

the INA, 8 U.S.C. 1183a, during the period in which the Affidavit or the Contract is enforceable. This proposed rule is also aimed at strengthening the enforcement mechanism for the Affidavit so that sponsors and household members who agree to use their income and assets to support the sponsored immigrant are held accountable if the sponsored immigrant ultimately receives means-tested public benefits during the period in which the Affidavit or the Contract is enforceable.

14. Once the sponsor has displayed the means to maintain an annual income at or above the applicable threshold, he must provide such support to the intending immigrant and meet all support obligations during the period the Affidavit is in effect. Specifically, this proposed rule would require sponsors and household members who execute an Affidavit or Contract to provide Federal income tax returns for three years, credit reports, credit scores, and bank account information.

15. Next, this rule also includes regulations to specify that a sponsor's prior receipt of any means-tested public benefits and a sponsor's failure to meet support obligations on another executed Affidavit, or household member obligations on a previously executed Contract, will impact the determination of whether the sponsor has the means to maintain the required income threshold to support the immigrant. A sponsor signature indicates that the sponsor does not have the financial means to maintain an annual income equal to at least 125 percent of the Federal poverty line,1 or 100 percent of the Federal poverty line for an individual who is on active duty (other than active duty for training) in the Armed Forces of the United States and who is petitioning for his or her spouse or child, and is relevant to determining whether the sponsor can, in fact, provide such support to the intending immigrant during the period of enforceability.

## V. STATEMENT OF THE FACTS

5

16. Banan Alassaf and Hamzah Alkordy were married on December 13, 2016, in the city of Auburn in Placer County, California; they have no children. Banan Alassaf holds no college degree. Hamzah Alkordy completed his undergraduate education at the University of the Pacific in Stockton, California. The defendant obtained his Doctor of Dental Surgery at the University of the Pacific, Arthur A. Dugoni School of Dentistry in San Francisco in 2014. Despite the defendant's professional capabilities, he has failed to provide any spousal support since 2018 and fraudulently confiscated the assets available to the plaintiff without her consent.

17. Despite an agreement where the defendant agreed to sponsor the education of his wife, he insisted she remains a dependent spouse pursuant to N.C.G.S. 50-16.2 or that he supports the livelihood of his spouse. Remaining at home subjected the plaintiff to the infliction of injury, unreasonable confinement, intimidation, or cruel punishment with resulting physical harm, pain, or mental anguish. The abuse was intense enough to cause the victim emotional harm besides physical harm.

18. Financial/economic abuse is when one intimate partner controls the other partner's ability to access, acquire, use or maintain economic resources, which diminishes the victim's capacity to support herself and forces intentioned dependence. Economic abuse is the primary reason the plaintiff's signature was forged on legal documents, and the defendant took possession of the plaintiff's property and bank accounts.

19. The defendant knowingly committed bigamy and married a woman named Amira Saqqa and began to share the marital home with her. Saqqa eventually filed for divorced, citing domestic violence as the primary cause. Defendant gave the woman a settlement of over $40,000 and the plaintiff's BMW automobile.

6

20. Defendant took out a mortgage on the home they both occupied after having a woman impersonate the plaintiff at the Placer County Recorder office. A document was produced, making the defendant the only homeowner for the purpose of obtaining a loan of $337,500.00 from Hometown Lenders Inc.

    The documents were signed under penalty of perjury, not unlike the divorce documents, where he perjured himself more than twelve times to complete the termination of his illegitimate marriage, which he knew was fictional.

21. No alimony has been awarded to the plaintiff in family court in California. Plaintiff is in need of support from the legal spouse. The defendant/spouse can pay support, or the amount of support is considered reasonable under the circumstances, which findings are necessary to uphold an award of true alimony, which is separate from the financial responsibilities contained in the Affidavit of Support.

22. Petitioner is in debt, and her assets have now been retrieved after Respondent obstructed his spouse's reentry into the United States, which eliminated her opportunity to live in the family dwelling and take control of her lawful property. As a victim of persistent abuse, She feared for her physical survival as well. The Respondent is in possession of several weapons, including those he has modified. The Respondent has subjected Plaintiff to intense fear from his access to these weapons, especially when he is aware that he lacks control over his temperament when under the influence of steroids that he has used to increase his muscle and body strength to enhance his abilities in bodybuilding competitions.

23. In exchange for allowing a U.S. citizen to sponsor an immigrant who does not meet other admission requirements, Congress requires the sponsor to ensure the sponsored immigrant does not become a public charge. The sponsor pledges his acceptance via the

affidavit of support. "[S]uch affidavit is executed by a sponsor of the alien as a contract(A) in which the sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable..." 8 U.S.C. § 1183a(a) (1)(A). The household size is relevant at the time of the application because the sponsor demonstrates his ability to support the number of immigrants being sponsored via the affidavit. The affidavit of support mandates the sponsor support and the other non-immigrant members of the household at 125 percent of the Federal poverty line. The contractual obligation that the petitioner (sponsored immigrant) may enforce against the sponsor concerns the support sponsor being required to provide a spouse in accordance with Form I-864, Affidavit of Support.

24. Courts have further ruled that damages under the USCIS Form I-864, Affidavit of Support are determined based on taxable income. In Flores v. Flores, the Western District of Washington ruled that the term "income" is governed by the definition contained at 8 C.F.R. § 213a.1. See 3:12-cv-05814-DGE (March 7, 2022). That provision defines income with respect to funds subject to federal income tax. Under today's decision, an Affidavit of Support plaintiff can recover damages under Form I-864 even if she receives public benefits or financial gifts from friends and family.

## VI. SUMMARY OF ARGUMENT

25. The plaintiff has been deprived of the most basic human rights: the right to be loved, protected and treated as a friend and a partner. She has been deprived of the husband her spouse pretended to be and the home she wanted to fill with children. The plaintiff has been denied the "sanctity" of a life where she is safe, instead, she was made to endure the pain of being beaten and the chaos of being afraid. The defendant has no

8

defense. A person who pled with his wife to forgive him for hurting her and to return from where she fled for the sole purpose of having her removed from the airplane when he called the Department of Homeland Security and accused her of being a threat. Any man who slaps a woman across the face and kicks her after knocking her to the floor is a threat. He was a threat to a woman who was involved in a bigamous relationship with him and a threat to the girlfriend he attacked in a restaurant, leading to his third arrest. Supporting a spouse of at least 125 percent of the Federal Poverty Guideline is a small price to pay for watching him behave with unmitigated arrogance and cruelty on a daily basis.

26. The U.S. Department of Homeland Security (DHS) has codified its regulations governing the Affidavit of Support requirements under section 213A of the Immigration and Nationality Act (INA or the Act). A class of immigrants is required to have an Affidavit of Support Under Section 213A of the INA (Affidavit) executed by a sponsor who agrees to provide financial support to the sponsored immigrant and accept liability for reimbursing the costs of any means-tested public benefits a sponsored immigrant receives while the Affidavit is in effect pursuant to section 213A(a)(2) of the INA. It is not an unforeseen agreement. It is an agreement with the government that was not unexpected.

27. Like any contractual agreement, it meets support obligations on a previously executed contract and will directly impact the determination of whether the sponsor has the means to maintain the required income threshold to support the immigrant. Receipt of means-tested public benefits by a sponsor indicates that the sponsor has the financial means to maintain an annual income. Most Americans pay yearly taxes that are withheld from an employee's paycheck and paid to the IRS on their behalf. This, too, is a

9

contractual agreement with the government and a support obligation based on federal codes.

28. Defendant signed an I-864 Affidavit of Support on December 22, 2016. Executing an I-864, therefore, creates a contractual obligation from Defendant to provide Plaintiff with necessary financial support to maintain a household income of at least 125 percent of the Federal Poverty Guidelines. The I-864 is effectively a contract between the sponsor and the United States for the beneficiary immigrant spouse, invoking an agreement by the sponsoring spouse to maintain support at the required income level to prevent the immigrant beneficiary from becoming a public charge. 8 U.S.C. § 1182(a)(4); 8 C.F.R. § 213a.2(a). Plaintiff is unemployed and does not receive income, placing her below the financial threshold, and no terminating event has released Defendant of his obligations under the Affidavit of Support. By failing to financially support Plaintiff, Defendant breaches his contractual duty.

## VII. REQUEST FOR RELIEF

29. Plaintiff requests an order of specific performance compelling Defendant to provide monthly financial payments to Plaintiff in an amount of at least 125 percent of the Federal Poverty Guideline for a household of one. Plaintiff also requests a mandate that such payments would occur by monthly wire transfer on the first day of each month until one of the five terminating events set forth in the Affidavit of Support occurs. The five terminating events are as follows: (1) Plaintiff becomes a U.S. citizen; (2) Plaintiff works or receives credit for 40 qualifying quarters of coverage under the Social Security Act; (3) Plaintiff loses her status as a lawful permanent resident and departs the United States; (4) Plaintiff becomes the beneficiary of a new affidavit of support; or (5) Plaintiff dies.

30. Plaintiff seeks enforcement of the Affidavit of Support, equal to damages in an amount totaling the missed payments from Defendant, to cover the financial support owed to Plaintiff since Plaintiff left their shared residence on April 4th, 2018.

31. Plaintiff seeks other relief within the Court's power to grant and which the Court deems just and proper.

Dated: December 23, 2022
Respectfully submitted,

*Banan alassaf*
Banan Alassaf, Plaintiff
2100 Lake Dam Rd #37219
Raleigh, North Carolina 27627
(919) 345-8105